Next case is the Bank of Guam v. United States, 2008, 5078. Mr. Melchior, when you are ready. Thank you very much, Your Honor. May it please the Court, this is here on a 12B6 dismissal and a 12B1 dismissal. Technically I think the 12B1 comes first, but the real issue is with respect to the 12B6 as to whether a claim was stated. I will spend a moment only on the 12B1 because obviously if the statute of limitations had run on all tax years prior to 2001, the taxes that we paid in 2003, according to the allegation of the complaint, could not be heard by the Court. Why don't you deal directly with the basic issue? I would like to, yes. Thank you. The basic issue is this. It is a pleading case and we have clearly alleged that the government through Congress enabled the assessment of the tax and that the tax was paid to Guam, required to be paid to Guam, and the regulations that apply to this are very plainly stated since 1993. Is this case termed the definition of imposed? It shouldn't depend on the definition of imposed, but if imposed matters as much as it did to the Court below, then we have pointed out that imposed is a term which is ambiguous and has multiple meanings, and the regulation before 1993 did say imposed by, but it hasn't said that since 1993. Since 1993 it says are exempt from taxation by a state or political subdivision. But then we have two decisions of the Ninth Circuit which have held that bonds such as these, the tax has not been imposed by Guam. They are essentially taxes by the United States government. Right, but payable to Guam and the regulation says exempt from taxation by, meaning paid to, the state. And we have alleged that the government... Isn't the state just the medium whereby the federal government is collecting the tax that it has imposed? Isn't that the import of the Ninth Circuit case? The Ninth Circuit case says that Guam, it said in so many words, Guam may impose this tax. And I cited that in the brief. It does, Guam may impose the tax because Congress has enabled it. And our complaint is that by enabling this tax to be assessed and collected in Guam, Congress in effect required a breach of the regulations which are a contract and which say that the income is exempt from tax and to the extent that creates an ambiguity, the interpretations over the years, which really shouldn't be here on a 10B6 motion, 12B6 motion, but they are here and it's very clear that the interpretations indicate for a long time that the government agreed that this was not taxable. But that was because of the change in the statute though, wasn't it, in 1986? So the Bank of America decision really is not followed by the Guam-O-Tal-Tal case. The Bank of America decision says, I have it here, says in so many words, the teaching of these cases, meaning cases going on for several decades before, may be summarized as follows. The tax imposed by Section 31 as amended is a territorial income tax, mirroring the provisions of the Federal Tax Code, et cetera. Whether it's a double mirror or a single mirror, it doesn't make any difference, but wasn't there a change in 1986 to the statute which authorized the territory of Guam to impose the tax directly? There was a statute in 1986 which authorized Guam to decouple from the Internal Revenue Code, but Guam didn't do it. Right. They had the authority to do it, and they didn't do it. What does that mean? I think nothing in terms of what we're talking about here, in the sense that Congress said, the Treasury says, I'm selling these bonds on the basis that there will be no tax, and there was a tax. And I think the tax could have been imposed by Guam by adopting a separate tax code, but instead Guam just followed by the Internal Revenue Code, and the Section 7651, which we cited, indicates that a tax imposed in a territory will be treated as if it were imposed in a state. So wherever you look, there are these ambiguities, but in the end what you have is a contract which says there will be no tax, exempt from tax, not exempt from tax imposed by it. Let me ask you, the Gumatautau decision does refer to this as a tax congressionally imposed on interest earned from U.S. bonds. Yes. It does say that. Now do you think Gumatautau was incorrectly decided? I believe so. It's inconsistent with VTCO and the Third Circuit. What is the error in Gumatautau? The refusal to double mirror, but it doesn't really matter, Your Honor, because Do you think that in Gumatautau the Court erred in saying that this was a tax imposed by the United States Congress? It didn't say that at all. It just said Guam may collect this tax. Well, yeah, but no, it says squarely, I'm reading it, until then, this is at the bottom of 1081, top of 1082, it says, Director acknowledges that if Guam actually passes its own tax laws, it will be precluded from taxing the interest paid by federal bonds. Then it goes on, until then, there is no constitutional impediment to the Guam government collecting from its residents the congressionally imposed tax on interest from U.S. bonds. And then it goes on, it says, further down that same page, it says, Congress, not the local legislature of Guam, imposed the tax. So, I mean, clearly Gumatautau says that the Congress imposed this tax. Now, do you think that was wrong? Well, it doesn't matter whether it was wrong or not. I've spent a lot of time analyzing... No, I understand, but do you think that Gumatautau was wrong in saying that Congress imposed the tax?  which Congress imposed allowed a tax to fall on the bond revenue? I understand that, but I'm just asking you a very narrow question. Do you say that Gumatautau was wrong in its holding that the U.S. Congress imposed this tax? No, and our complaint alleges that Congress imposed this tax. So, in that sense, we get back to Winstar and the local Oklahoma Bank and those cases which say where Congress changed the law or caused the law to be changed, then if that results in a breach of the contract, it is a damaged claim which has to be entertained. Shouldn't you be arguing that whether Gumatautau was right or wrong is irrelevant to us, we're not bound by them? That's what I was trying to say, Your Honor, exactly. I thought so. I mean, we are bound by Gumatautau to pay the tax. And what that brings up is this Amber case which we brought to the Court's attention through supplemental briefing which was decided after we filed the first brief in which the Court said that in this particular set of circumstances, a different set of circumstances to be sure, it was the interpretation placed by a court on a statute which had long been interpreted differently, which was the triggering act which ultimately resulted in the default and the anticipatory breach. And that's what we're saying here. Before we saw Amber, we used the Toomley case from the First Circuit which is, I thought, a very, very interesting case from the perspective that there was a contract made if you listen to the District Court's view, I'm sorry, the Court of Claims' view, listen to the Court of Claims' view that actually this breach was established in 1950. The bank was organized in the 1970s. The record doesn't show that, so it's sort of hard for the bank to have been involved in the contract in 1950. But in any event... But the essence of your argument, though, is it doesn't matter who imposed the tax, whether it was the federal government or Guam. There was a contract between the bondholder which was changed by the United States. Right. So your claim is in a contract basis, not a tax basis. Absolutely. So it doesn't matter who the tax is imposed by. We tried to make that point to the court below that this was a contract claim and not a tax case. And here we are, arguing exactly what Your Honor has pointed out. It is a contract case. The contract was that the bonds were to be free of any tax payable to a territory. No tax imposed by a territory. No. What does the bond say? Well, the bonds before 1993 said imposed by, but may I call your attention, Your Honor, to 31 CFR section 356.32A says securities issued under this part, etc., are exempt from taxation by a state or political subdivision of a state. And then they go on in section 357.2 to define state as including any territory or possession of the United States. Now, that is, according to the government's argument, that is an improper regulation, and I think they said void in their brief, but it's not because clearly we pointed out that state has been defined to include territory since the 19th century by Supreme Court decisions, and that obviously provided the Treasury under its general authority under 31 U.S.C., I think it's section 3101, to define all of the terms under which the bonds are sold, and they made this definition, which is clearly within the discretion of the administrative agency, the Treasury Department, and is subject to Chevron deference by this Court. Now, I'll just speak briefly to the other matters. The Reformation claim seems to me very clear. We have alleged in paragraphs 22 and 23 of the complaint that if the contract really was one which exempted only a tax imposed by a territory on its own without any authority, which can't be done, then that was a common mutual mistake, and the Court below just ignored that argument and said there's no mutual mistake alleged, but all you have to do is read 22 and 23, and there it is. And as far as the ancillary claim about taxes yet to be due, under the Coconin case, it's a common issue of fact. It doesn't really matter, except if we win this decision eventually, then if we have to litigate it again, we'll have to litigate it again with respect to future years. Thank you. We'll save the remainder of your time. Mr. Mizoguchi. Yes. Thank you, Your Honor. May it please the Court, we respectfully request that the Court affirm the trial court's decision because the United States Congress's imposition of the Guam territorial income tax did not breach any contract. If I may take one moment to put into historical and legal context the tax that's at issue. The tax exemption question that's at issue has its roots in the issue of federal supremacy, and you can see that in the case of McCullough v. Maryland, holding that Maryland could not tax federal assets. Congress, by statute, has defined the taxation that may apply to United States government obligations. That's 31 U.S.C. 3124, in which the Congress provided that these obligations are exempt from taxation by states and political subdivisions, and in paragraph B of 3124, provided that the Internal Revenue Code, in other respects, defines the taxability of government obligations. The tax that is at issue, the Guam territorial income tax, was enacted by the Congress in 1950, and in doing so, the Congress at 48 U.S.C. 1421I specified that the federal income tax laws, which include the Internal Revenue Code, shall be deemed to apply in Guam, just as they do here. And that's important when you look at the juxtaposition of the federal and state-level taxation. What's the change of name, though? It changed to Guam throughout? Correct, Your Honor. The Internal Revenue Code, as it is applied in Guam, pursuant to 48 U.S.C. 1421I, is denominated the Guam territorial income tax. And its name changes, but it is, in other respects, the Internal Revenue Code applied in Guam, as if it is their federal-level taxation. And as the Ninth Circuit held in 1976 in the Bank of America case, Congress did so. One of the purposes of Congress's doing this legislation was essentially to enable the Treasury not to have to make direct appropriations to its possession. Well, they could have passed a totally separate tax law instead of adopting the IRS code. The Congress could have. Or 55 volumes, whatever it is today. But they could have passed a different tax code separately, didn't have to mirror the IRS code, did they? They did not, but that is what they have done. And the important thing, from our perspective, is that is a federal-level tax that is applied in the possession of Guam. The trial court correctly framed the issue, based on the bank's pleading in paragraph 7 of its complaint, that it is the language in these Treasury bonds that they are exempt. And so, therefore, the contract that must be being alleged, that the court may see a copy of the bond at Appendix A100268. And it's small print, but the bond does say the bond is exempt from all taxation now or hereafter imposed on the obligation or interest hereon by any state or any of the possessions of the United States or any local taxing authority. So clearly... What about paragraph 9 of the complaint? Paragraph 9 of the complaint refers to documents that the bank, with one exception, obtained, as we understand from the bank's pleadings, in a 2002 FOIA request that were never addressed to the bank and the trial court found to be waived by their entitlement. Were they addressed to taxpayers in general? They were with one... No, with one exception, they were not addressed outside of Treasury to the extent they were addressed at all. And the one exception that I am speaking of, Your Honor, is what we call the patent letter, a 1988 letter from an associate chief counsel in the IRS to the Guam Department of Revenue and Taxation. In that letter, which actually appears right before the bond specimen I just cited in the appendix, this attorney states, in essence, to the Guam Department that you can't impose a tax... Possession tax cannot be imposed on these obligations. On U.S. government bonds. Correct, but that begs the question, Your Honor, which is, is this a possession tax? And in that same letter, there is no critical... Whether, because this tax was imposed by the Congress, it's a clear legislative fact that that is the case, whether that is a possession tax, more also importantly, that letter makes no reference to and does not analyze the Ninth Circuit's holding in the Bank of America case, which occurred in 1976, two years before the bank, which also resides in the Ninth Circuit, commenced purchasing these Treasury obligations. But the question really is, is this a matter that should be decided on a motion to dismiss on 12b-1 and 12b-6? Without really a trial and an opportunity to at least have some of these documents submitted, testimony, then Bank might or might not win, hypothetically, but aren't they entitled to a trial or at least establish their claim? No, Your Honor, because as a matter of law, given what we know and is not going to change no matter what sort of pleading or discovery takes place, we know that these bonds, that they are exempt from taxes imposed by a possession. We know that the Congress imposed it and that that was the law prior to the banks entering into these contracts. That's a question that I asked at the beginning. Does the whole case turn on whether or not the definition of impose is an imposition by the government or whether it was an adoption by Guam of those particular regulations and statutes? Now, they have the opportunity after 1986 to amend it on their own. The legislature of Guam can amend it. The legislature of Guam may delink and adopt its own taxes, but the tax on issue, Your Honor, is the one that has been... No, I understand that, but the question really is whether or not the term imposed is the real key to the entire issue. To the extent that it is, Your Honor, and let's assume that it is, it's clear what the meaning of that phrase is given its historical context. It grows out of the federal supremacy issue and Congress enacted the tax. Congress in 3124 not only specified that the tax would be... from state level taxation, it also said USGOs are otherwise subject to the internal revenue. And then in 48... Well, actually, in 48 USC 1421I, Congress made internal revenue code applicable in Guam. Now, the question of whether there's some understanding or the Treasury somehow entered into a contract, that legally is impossible given that the authority of the Treasury to do anything with respect to US government obligation taxation only comes from the Congress. And in 31 USC 3121, which is actually mentioned in one of the documents the bank cited and is defended in its brief 36, in 31 USC 3121, Congress stated the things the Treasury can prescribe with respect to US government obligations, one of which is not taxation, and certainly there is not, as you would need in a Winstar case, an unmistakable promise that the government is waiving what amounts to its sovereign ability to tax. What does the Gumatautau case do for you? The Gumatautau case, Your Honor, is actually not a change from the Bank of America case, but both cases recognize the legislative fact that it was the Congress that enacted this tax, and because it is, unlike a state tax, a federal level tax, it is not the kind of tax that the exemption for states, or as it's been extended through regulations, sessions, applies to the taxation of Treasury income. If it were otherwise the case, you would not have a uniform system of federal level taxation. You would have a complete total exemption for holders of government obligations who happen to reside in Guam from federal level tax and any other tax. But that is not what Congress intended. That is not what is prescribed on the federal level tax. Hypothetically, if in fact Guam, the legislature of Guam, decided to change the statute but still collect the tax, could they do that? If Guam were to delink from the federal government and impose a tax that it legislated, yes, that would be a different, that would not be our issue, but that would be a different tax. Would that be a different tax? It would be a Guam-imposed tax. A Guam-imposed tax, which would not be able to be imposed on government obligations. On Treasuries, correct, Your Honor. Mr. Goode, let me ask you, earlier Judge Garza asked you whether you thought that the case turned on the meaning of imposed, and I want to make sure, what is your answer to that question? It does, Your Honor, in the sense that these alleged contracts use the term imposed. So as a matter of contract interpretation, you're saying if it was imposed by the United States, the exemption doesn't apply. Correct, Your Honor. And I also want to point out that it is not correct that Treasury regulations stopped using the term imposed after 1993, and you can see the continuing use of the term imposed in 31 U.S.C. 309.4 and 340.3, which we discuss in our brief at pages 29 to 32. I'd like to briefly address the Winstar, Columbia, Amber sort of allegations. The case doesn't really fit into a Winstar or the local Omaha, what we call the Guarini cases, because in all those cases what you had is a, you had, first of all, you had a contract, and we dispute that there's any contract here, but secondly, you then had a subsequent intervening congressional action. That didn't happen here. The bank's complaint, paragraph 13, the last breaching act, the only breaching act they attribute to the United States in paragraph 13, is the Congress's enactment of the Guam Territorial Income Tax. That act occurred in 1950, long before the bank entered into the commencement of any of its purchases, and therefore, it's not legally possible for the bank to have entered into the contract that it claims. The Twombly, I just would add, was a private contract promise. It didn't involve the government. It didn't involve the question of whether the government had unmistakably promised to the contrary of Congress's legislation that the bank would somehow be free of the Congress's taxation. Amber is an apposite, because it too involved the application of a post-contract statutory amendment, and it involved, in contrast to this case, a prior mutual understanding of the core issue. Are you saying there was no contract between the bondholder and the government? I'm sorry? There was no contract between the bondholder and the government? In our case, Your Honor? No. There's a contract that is the same contract every bondholder has, which is, hopefully, the government will pay its principal interest on time, and there are other provisions about it. The contract, the bond, does recite that these bonds are exempt from taxation imposed by a state or subpoena. But that's not the same thing as a promise to indemnify the holder against the imposition of a federal tax on a federal bond. Unless the Court has any further questions. No. Thank you, Mr. Gucci. Thank you, Your Honor. Mr. Melchior. Yes, Your Honor. Thank you. The government concentrates again on paragraph 7 and on the legend on the bonds when they were in printed form, but ignores entirely. I didn't hear anything in the government's argument about the regulations that I quoted repeatedly, other than that they may be void or they may not be and the contract may be illusory as far as the fact that it warrants an exemption from tax. What regulation do you rely on, Mr. Melchior? The regulations we rely on are 31 CFR    read together. Now, I think that's a good argument to make that the contract may be illusory as far as the fact that it warrants an exemption   I think that's a good  to make that the  may be illusory as far as  that it may be illusory as far as the fact that it may be illusory as far as the fact that it may be illusory as far as the fact that it may   as far as the fact  may be illusory as far as  may be illusory as far as his requisition as far as the fact that our discretion that the certain cases were for the of the U.S. G.O.'s understood that the acts of the U.S. Congress did not authorize the levy of any land income tax etc. At all those times this common mutual and reasonable mistake by both parties was a critical term etc. And paragraph 23 this common and mutual mistake requires reformation. So if it is what the government says then we're entitled to reformation. Thank you very much. Thank you.